FILED
SUPERIOR COURT
OF GUAM

2020 AUG -7 PM 1: 31

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| THE PEOPLE OF GUAM,<br><br>vs.<br><br>**STEVEN JAMES LEON GUERRERO,**<br><br>Defendant. | CRIMINAL CASE NO. CF0742-18-01<br><br>**DECISION AND ORDER** |
|---|---|

### INTRODUCTION

This matter came before the Honorable Vernon P. Perez on June 18, 2020, for hearing on Defendant Steven James Sablan Leon Guerrero's ("Defendant") Motion to Suppress. Defendant was present with counsel, Attorney William B. Brennan, and Assistant Attorneys General Woodrow D. Pengelly and Renaida Z. San Nicolas were present on behalf of the People of Guam ("the Government"). Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

### BACKGROUND

On December 21, 2018, Defendant, Dennis Delosario Dizon, Melvin Sablan Leon Guerrero, and Jason Taimanglo were each indicted with the following charges: (1) Burglary (As a Second Degree Felony) – 4 Counts; (2) Theft By Receiving (As a Second Degree Felony) – 4 Counts; (3) Theft (As a Second Degree Felony) – 4 Counts; (4) Attempted Theft (As a Second Degree Felony); and (5) Criminal Trespass (As a Misdemeanor). (Indictment, Dec. 21, 2018). These charges are based on allegations that the defendants were involved in four

separate burglaries during the period from October 2018 to December 2018. All charges relating to Defendant were severed from the other defendants on July 31, 2019. *See* Order, Jul. 31, 2019.

On September 27, 2019, Defendant filed the instant Motion to Suppress. On November 4, 2019, the Government filed its Opposition, and on November 12, 2019, Defendant filed his Reply. The Court denied Defendant's request for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), finding that Defendant failed to make a substantial preliminary showing that a *Franks* hearing was warranted. (Dec. & Order, Mar. 10, 2020). The Court found that Guam Police Department ("GPD") Officer Peter T.F. Paulino ("Officer Paulino") misrepresented certain factual allegations in his warrant application, but did not find such misrepresentation to be intentional or reckless and material to the Ex Parte Judge's finding of probable cause. *Id.* at 5.

The Court subsequently set a Motion Hearing for March 27, 2020 to consider the remaining arguments raised in Defendant's Motion to Suppress. The motion hearing did not go forward, however, due to the closure of non-essential government operations by the Governor of Guam due to the COVID-19 (coronavirus) pandemic.

On June 18, 2020, the Court held a Motion Hearing, and heard sworn testimony from Officer Paulino. The parties were then given the opportunity to submit proposed findings of fact and conclusions of law for the Court's consideration. On July 20, 2020, Defendant filed his proposed findings of fact and conclusions of law. The Government did not file any proposed findings. The Court subsequently placed the matter under advisement.

## FACTS

By a preponderance of evidence, the Court makes the following findings of fact:

1. Sometime in late 2018, Officer Paulino came to be involved in an investigation related to a Guam Customs and Quarantine Agency warehouse burglary. One of the items stolen from the warehouse was night vision goggles.

2. In November 2018, GPD officers confirmed that night vision goggles were found on an individual named Dennis Dizon ("Dizon"), during a response to a burglary in progress complaint at a Guam Power Authority Substation.

3. Officer Paulino interviewed Dizon and was provided information related to the burglaries of the custom's warehouse and a Black Construction Company worksite. Dizon implicated several individuals, including Defendant, and alleged that the stolen property was located at Defendant's home in the Ukudu Pipeline area. Dizon provided a description of a white container with a white truck with a utility bed.

4. Officer Paulino conducted a residence verification and confirmed the residence and white utility vehicle.

5. On December 11, 2018, Officer Paulino applied for a warrant to search property for specific items relating to the alleged burglaries. The application was brought before the Court as Ex Parte Judge and was granted. The application and search warrant identified the target as:

**Steven Leon Guerrero**
White Shipping Container
(used as dwelling), Ukudu Pipeline
Dededo, Guam 96929

(Def. Ex. I at p. 93).[1]

6. The warrant application stated its purpose was "to legally obtain and seize evidence and any items listed in 'Attachment A' pertaining to anything related to drug activity from . . . a White Shipping Container, off the Ukudo Pipeline, Dededo, to include a 2000 Ford F250 White Ford utility vehicle. . ." *Id.* at p. 94.

7. Officer Paulino admitted at the Suppression Hearing that the reference to drug activity was because he copied and pasted the language from a previous Mandana

---

[1] The Affidavit for Search Warrant and Search Warrant also identified the residences of co-actors Jason Taimanglo, Melvin Leon Guerrero, and Dennis Dizon. (Def. Ex. I at p. 94). No items were seized from their residences. (Def. Ex. I at pp. 101-102).

Drug Task Force Warrant. No drug activity was alleged in the investigations underlying this matter.

8. The warrant application described two alleged burglaries: an October 1, 2018 Guam Customs and Quarantine warehouse in Tiyan and a November 5, 2018 Black Construction storage container burglary in Ritidian/Yigo. The Search Warrant authorized police to search for and seize the items listed in Attachment A. Attachment A delineated thirty-five items under two headers: "Guam Customs and Quarantine (GPD case # 2018-28373)" and "Black Construction (GPD case # 2018-31845)." (Def. Ex. I at pp. 98-100). The Search Warrant did not incorporate the warrant application.

9. Officer Paulino was the lead officer related to the execution of the search warrant on December 12, 2018 at 6:00 a.m. Officer Paulino briefed approximately 30 officers at the staging area at Dededo Precinct prior to heading to the Ukudu pipeline area.

10. When officers arrived at Defendant's property, they found what was described as a "junk yard," with lots of small equipment, tools, and machinery.

11. Officer Paulino called three individuals to come and assist with the search: Jesse Garcia from Black Construction, Guam Customs and Quarantine Officer Sinforoso C. Galindez Galindez, and Randy Sager of Reaction Company. Officer Paulino testified that he called these three individuals to review items found at the location to determine if the items were stolen from their respective agencies/organizations.

12. Neither Reaction Company nor Mr. Sager were mentioned in the Warrant Application or Search Warrant. Officer Paulino testified that he learned of an alleged link between his investigation with the Reaction Company burglary sometime after he appeared before the Court *ex parte* on December 11, 2018, to apply for the search warrant, but before the warrant was actually executed on December 12, 2018. Officer Paulino believed that either Sergeant T. To or Sergeant S. Munoz informed him of a connection to the Reaction Company burglary.

13. Officer Paulino testified that he did not go back before the *ex parte* judge to apply for an additional warrant or to expand the scope of the existing warrant. Officer Paulino also testified that he did not contact the on-call Assistant Attorney General to request guidance on the potential connection to Reaction Company and its effect on the Warrant Application.

14. GPD officers executed the warrant and seized several items. Items listed in two custody receipts were returned on December 20, 2018. *See* Def. Ex. I at pp. 101-104. Several other custody receipts in discovery also show that other property was seized on December 12, 2018 from Defendant's home. *See* Def. Ex. B, D, E, and F. These items were not attached to any return of warrant filed before a judge and appear to be some items that may have been associated with the Reaction Company burglary, which was not referenced or included in the Warrant Application.

15. Officer Paulino testified that items seized that were not listed in the search warrant attachment were items found in "plain view" and were identified by either Officer Galindez, Mr. Garcia, or Mr. Sager, and sized "subject to verification" that the items were stolen.

## DISCUSSION

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). Under the Fourth Amendment, "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The particularity requirement for warrants "makes general searches under them impossible." *People v. Camacho*, 2004 Guam 6 ¶ 16 (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)). "The particularity requirement ensures that as to what is to be taken, nothing is left to the discretion of the officer executing the warrant. In addition, the Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by

judge or magistrate, are *per se* unreasonable under the Fourth Amendment." *Id.* (internal citations, quotation marks, and alterations omitted). The warrant "need only be reasonably specific, rather than elaborately detailed, and the specificity required varies depending on the circumstances of the case and the type of items involved." *United States v. Rude*, 88 F.3d 1548, 1551 (9th Cir. 1996) (internal quotation marks and citations omitted).

The first issue before the Court is whether officers exceeded the scope of the search warrant. Defendant moves the Court to find that officers indeed exceeded the scope of the search warrant and engaged in a general search, *see* Mot. Suppress at 7-9, Sep. 27, 2019, while the Government moves the Court to find that the officers acted within the scope of the warrant in seizing evidence of stolen property, noting that the Search Warrant provided for the seizure of "evidence and items of evidentiary value, but not limited to, any items which may be fruits of the crime." *See* Opp'n at 7-8, Nov. 4, 2019.

"[G]eneric descriptions of the things to be seized are permissible only in limited circumstances . . . where the investigating and issuing authorities are unable more particularly to identify those goods." *People v. Tockgo*, 193 Cal. Rptr. 503, 508 (Cal. Ct. App. 1983). *See also United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) ("Generic classifications in a warrant are acceptable only when a more precise description is not possible.").

In this case, the purpose of the warrant application was "to legally obtain and seize evidence and any items listed in 'Attachment A' pertaining to anything related to drug activity from . . . a White Shipping Container, off the Ukudo Pipeline, Dededo, to include a 2000 Ford F250 White Ford utility vehicle. . ." (Def. Ex. I at p. 94). No drug activity was alleged in the investigations underlying this matter. Officer Paulino admitted at the Suppression Hearing that the reference to drug activity was because he copied and pasted the language from a previous Mandana Drug Task Force Warrant. Attachment A to the Search Warrant clearly delineated thirty-five (35) items that were stolen from Guam Customs and Quarantine Agency and Black Construction. It is not clear from the facts presented at the hearing that a more precise description of any additional items suspected to be stolen could not be provided, or that the number of items stolen was so voluminous that precise descriptions could also not be provided.

Therefore, the Court finds that the purpose of the warrant is not clear enough to excuse the general search for "evidence and items of evidentiary value, but not limited to, any items which may be fruits of the crime." Additionally, the search warrant and affidavit did not include any information regarding the Reaction Company burglary. The scope of the warrant clearly did not authorize a general search for evidence related to the Reaction Company burglary.

The next issue before the Court is whether the plain view exception to the warrant requirement applies. "The general rule that warrantless searches are presumptively unreasonable, however, is subject to certain well established exceptions, such as 'good faith' and 'plain view,' which find their roots in Fourth Amendment jurisprudence." *Camacho*, 2004 Guam 6 ¶ 16 (citations omitted). Seizure of items, even if outside the confines of the warrant, could be made if the evidence was properly seized under the plain view doctrine. *Id.* at ¶ 20. *See also Horton v. California*, 496 U.S. 128, 135 (1990) ("An example of the applicability of the plain view doctrine is the situation in which the police have a warrant to search a given area for specific objects, and in the course of the search come across some other article of incriminating character."). "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Horton*, 496 U.S. at 133. Three elements must be satisfied: (1) the officer must arrive at the place from which the evidence could be plainly viewed without violating the Fourth Amendment; (2) the evidence must be in "plain view" and its incriminating character must also be immediately apparent; and (3) the officer must also have a lawful right of access to the object itself. *Camacho*, 2004 Guam 6 ¶ 20.

Here, the officers plainly viewed the evidence, even if outside the confines of the search warrant, without violating the Fourth Amendment. The initial intrusion onto Defendant's property was justified by the execution of the Search Warrant. It is not clear, however, that the "incriminating character" of the items seized was immediately apparent. Officers "who seize an article must be presently aware of some specific and articulable fact from which a rational link between the item seized and criminal behavior can be inferred." *People v. Superior Court (Meyers)*, 598 P.2d 877, 880 (Cal. 1979). The "extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before

them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Horton*, 496 U.S. at 136.

Here, in order for the officers to determine whether the items on the property were stolen, the officers had to verify that the items were in fact stolen. This verification goes beyond the requirement that the items' incriminating character was immediately apparent to the officers. The officers had a list of items that were stolen that they suspected they would find. However, the officers did not simply seize items fitting the general descriptions of the property stolen in the unsolved burglaries; representatives from the agencies/organizations that were burglarized were called down to come down and identify their items; the items had to be further verified. This is not to say that victims of crimes can generally aid police in execution of a search warrant specifically related to their victimization, under some circumstances. *See, e.g., Meyers*, 598 P.2d at 882 ("no constitutional prohibition forbids the use of the burglary victims in this case from assisting the police in the execution of their valid warrant to search. . . . The circumstances of the burglary rendered an exhaustive inventory of stolen property impossible.").

"The theory of [the plain view] doctrine consists of extending to non-public places such as the home, where searches and seizures without a warrant are presumptively unreasonable, the police's longstanding authority to make warrantless seizures in public places of such objects as weapons and contraband. . . . Dispensing with the need for a warrant is worlds apart from permitting a lesser standard of cause for the seizure than a warrant would require, i.e., the standard of probable cause." *Arizona v. Hicks*, 480 U.S. 321, 327 (1987). The items were not weapons or contraband, such that their incriminating character can be assumed by the Court. Rather, the Government should have presented evidence at the suppression hearing that the items were in plain view and their incriminating character were immediately apparent; the witnesses who actually identified the items were not called.[2] No evidence was presented either indicating that an exhaustive inventory of stolen property from either the Guam Customs and

---

[2]   The Government bears the burden of proving that the plain view exception applies to the seizure of certain property. *See United States v. Chesher*, 678 F.2d 1353, 1356 (9th Cir. 1982).

Quarantine warehouse burglary or the Black Construction burglary was impossible. Accordingly, the Court finds that the items returned on December 20, 2018 that were not listed in Attachment A of the Search Warrant must be suppressed.

Lastly, as the scope of the warrant clearly did not authorize a search for evidence related to the Reaction Company burglary, any items identified by Mr. Sager would also not be applicable under the plain view doctrine, as the first element would not be met. Therefore, items in Exhibits B, D, E, & F must be suppressed.[3]

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Suppress. All items seized that were not listed in Attachment A of the Search Warrant are suppressed from use at trial. As Defendant remains in an asserted status, a remote Status Hearing via teleconference is set for ___AUG 1 1 2020___ at __9:00__ (a.m)/p.m.

**IT IS SO ORDERED** this __7th__ day of August, 2020.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
1) AAG
2) ATKUJOIA LAWFIRM
AUG 0 7 2020 Time: 1:35p
_____
Deputy Clerk, Superior Court of Guam

---

[3] These items were also not returned as evidence seized pursuant to the warrant to search Defendant's residence. This also demonstrates that even the officers implicitly conceded by the lack of return of these items that they were not within the scope of the Search Warrant.

---

_People v. Leon Guerrero_
Case No. CF0742-18-01
Decision and Order